THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DANIEL ROTKVICH, Defendant-Appellee.

First District (1st Division) Nos. 1—92—4110, 1—92—4230 cons.

Opinion filed December 27, 1993.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Laura L. Morrison, and William M. Traynor, Assistant State's Attorneys, of counsel), for the People.

Maurice A. Winkler, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

The State of Illinois appeals two orders of the circuit court of Cook County. The first order granted defendant Daniel Rotkvich's petition to rescind the statutory summary suspension of defendant's driver's license. The second order granted defendant's motion to suppress evidence in the criminal prosecution for driving under the influence of alcohol (DUI) (see Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, pars. 11—501(a)(1), (2)) that arose out of the same incident addressed in defendant's petition. The State filed timely notices of appeal, which were consolidated for review before this court.

The record on appeal indicates the following facts. On August 2, 1992, Palos Hills police officer Sue Ann Gott arrested defendant, charging him with DUI and violating the minimum speed limit (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 11—606(a)). On August 18, 1992, the Secretary of State sent defendant a notice confirming the statutory summary suspension of his driver's license. The record suggests that the suspension was entered because defendant submitted to a test that indicated he had a blood-alcohol concentration of .26 on the night of his arrest.

Defendant filed a petition to rescind the suspension on August 26, 1992. A hearing on this petition was held on September 23, 1992. The hearing focused on the issue of whether the police had reasonable grounds to arrest defendant.

Officer Gott testified that at approximately 3:15 a.m. on the date at issue, her squad car was parked at a gas station on the northeast corner of 103rd Street and Roberts Road. Officer Gott observed that defendant was parked at a drive-up window of a convenience store located at approximately 102nd Street and Roberts Road. According to Officer Gott, the store was closed and dark; the outside lights were darkened, with only dim lights from machines lighting the interior. There did not appear to be anyone inside the store. Defendant's car remained at the drive-up window for approximately two minutes, then pulled around to the store's other drive-up window, where it remained for a minute. Officer Gott indicated that defendant was not served at either window.

Officer Gott testified that she watched defendant's car pull out

onto Roberts Road and proceed to the intersection with 103rd Street. The car began to turn to head eastward on 103rd Street, but then turned around to head westward. Officer Gott pulled out of the gas station and followed defendant's car for approximately a mile. According to Officer Gott, defendant was initially travelling at approximately 25 miles per hour in a 35-mile-per-hour zone. Officer Gott indicated that as defendant's car travelled up a hill, it slowed to between 10 and 15 miles per hour and almost came to a complete stop at the top of the hill. Defendant's car then travelled at between 10 and 15 miles per hour until it pulled into the parking lot of another closed convenience store.

Officer Gott testified that she then activated her emergency lights as defendant pulled in front of the second store. Officer Gott stated that she stopped defendant because he was driving too slowly. Officer Gott also testified that there was no traffic on the road at this time, aside from defendant's car, her squad car and another squad car.

Officer Gott testified that as she approached defendant, who had exited his car, she could smell alcohol on his breath and observed that defendant was using the car door as a support. Officer Gott asked defendant to perform field sobriety tests. According to Officer Gott, defendant took 20 steps during the "heel-to-toe" test instead of the requested 10 steps. Defendant failed to follow the instructions of the "finger-to-nose" test by attempting to touch his nose with both index fingers at the same time. Officer Gott also noted that defendant missed his nose with both fingers. Officer Gott also testified that defendant failed to complete the "one-legged-stand" test. Based on her 13 years of police experience, including 50 to 75 arrests for DUI, Officer Gott concluded that defendant was under the influence of alcohol.

Defendant testified that at the time in question, he was coming from a music lounge when he stopped for cigarettes at the drive-through convenience store. Defendant stated that he had at least five beers at the lounge. According to defendant, he drove up to the first store window because the store was "lit up inside." Defendant stated that he had been to this store many times before. After waiting at each service window for a few minutes, he pulled back out onto Roberts Road and then turned to proceed westward on 103rd Street. Defendant indicated that he travelled at between 25 miles per hour and 35 miles per hour for about a mile, looking for a White Hen Pantry. Defendant testified that he had slowed his speed momentarily along the way because he had second thoughts about going to the White Hen Pantry. However, defendant testified that he was pulling into the White Hen Pantry when he saw the police lights.

At the conclusion of the hearing, the trial court indicated that the case was a "close call." The trial court questioned why defendant would be driving so slowly in the absence of traffic, but then indicated that if there was no traffic, there would be no violation of the minimum speed limit. The trial court then granted defendant's petition to rescind, concluding that the police lacked reasonable grounds to stop defendant. The State timely appealed this order.

The record indicates that defendant also filed a motion to suppress evidence in the criminal prosecution arising from this same traffic stop. This motion was heard on October 28, 1992, by the same trial judge that heard defendant's petition to rescind. At the opening of the hearing, the trial judge indicated his familiarity with the case and briefly outlined evidence adduced at the previous hearing. Officer Gott then gave testimony that was substantially the same as her prior testimony. Officer Gott also testified that she arrested defendant not only for slow driving, but also for suspicious activity at the first convenience store. Officer Gott indicated that there had been an armed robbery in the same strip mall as the first convenience store and that the surrounding area had her police department's highest crime rate. Officer Gott indicated that defendant's activity could suggest a break-in. Officer Gott further testified that 103rd Street was only one lane westbound and that neither she nor the other squad car following defendant could travel at the speed limit. Defendant did not testify at this hearing.

Following argument by counsel, the trial court ruled as follows:

"I don't feel it falls within reasonable articulable suspicion. The convenient store was lit. It wasn't pitch dark. He stayed there for more than three minutes, drove to one side, drove to the other, and drove out when nobody came to service him. [Defendant] [d]idn't break any laws of the State of Illinois proceeding on Roberts Road or 103rd Street. Driving slow is not against the law in the State of Illinois unless you have a posted minimum speed limit and there was no minimum speed limit posted."

The trial court then granted defendant's motion to suppress. The State filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)). The cases were consolidated for review by this court.

## I

This court first considers the trial court's decision to grant defendant's petition to rescind the summary statutory suspension of his driver's license. Generally, such a decision will not be disturbed on appeal unless it is against the manifest weight of the evidence.

*(People v. Safiran* (1992), 229 Ill. App. 3d 639, 641, 593 N.E.2d 1027, 1028.) However, the decision to grant a petition to rescind may be reversed where the trial court has not applied the correct legal standard to the facts of a case. *People v. Repp* (1988), 165 Ill. App. 3d 90, 94, 518 N.E.2d 750, 754.

For example, in *Repp*, the trial court granted a petition to rescind, ruling that the police lacked probable cause to arrest the defendant. This court noted that probable cause is synonymous with this State's statutory standard of "reasonable grounds." (*Repp*, 165 Ill. App. 3d at 94, 518 N.E.2d at 753-54.) The *Repp* court then noted that when the legality of an investigatory stop is at issue, a court should apply the less stringent standard of whether the police had a reasonable and articulable suspicion that the person either has committed or is about to commit a crime. (*Repp*, 165 Ill. App. 3d at 94, 518 N.E.2d at 754; see *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) Thus, it was error in *Repp*—which involved an investigatory stop—for the trial court to grant the petition based on lack of probable cause.

■ In this case, both the State and defendant discuss whether Officer Gott possessed facts supporting a reasonable, articulable suspicion of criminal activity and thereby met the standard for a *Terry* investigative stop. However, the transcript of proceedings indicates that the trial court ruled that the police lacked "reasonable grounds" to stop defendant. Therefore, this case is similar to *Repp* insofar as both trial courts failed to apply the correct standard to the petition to rescind.

In *Repp*, however, the trial court applied the incorrect standard at a hearing that covered both the petition to rescind and the motion to suppress. (See *Repp*, 165 Ill. App. 3d at 94, 518 N.E.2d at 754.) In this case, the motion to suppress was heard separately. Moreover, the record indicates that following the second hearing, at which Officer Gott provided additional testimony in support of the State, the trial court applied the correct "reasonable and articulable suspicion" standard in granting defendant's motion. Given this record, a reversal of the trial court's ruling on the petition is not required if the trial court's ruling on the motion to suppress is correct. This court now turns to consider that question.

## II

As noted above, the State need only show that the police had a "reasonable suspicion" of criminal activity to justify the investigatory stop at issue in this case. To meet this standard, the police officer

must be able to point to specific articulable facts which, when taken together with the rational inferences therefrom, reasonably warrant the stop of defendant's vehicle. (See *Safiran*, 229 Ill. App. 3d at 641, 593 N.E.2d at 1028.) Generally, a traffic violation provides a sufficient basis for a traffic stop. (*Village of Lincolnshire v. DiSpirito* (1990), 195 Ill. App. 3d 859, 863, 552 N.E.2d 1238, 1240.) However, a reasonable suspicion may arise even when the police officer has not witnessed a violation of law. (See *Safiran*, 229 Ill. App. 3d at 641, 593 N.E.2d at 1028.) Facts which in themselves do not justify police intrusion may, when taken together, warrant investigation. *People v. Payton* (1991), 208 Ill. App. 3d 658, 663, 567 N.E.2d 540, 543.

■ The record of the hearing on defendant's petition indicates that Officer Gott stopped defendant's vehicle because defendant was driving very slowly. However, Officer Gott also testified that there was no traffic on the road other than defendant's car and the two police cars. Indeed, Officer Gott testified at the first hearing that the speed at which defendant was travelling at the time did not impede traffic. Officer Gott later testified at the hearing on the motion to suppress that it was not her intention to pass defendant's vehicle; rather, her intent was to follow and observe defendant's vehicle. Officer Gott also attempted to testify as to the other squad car's intent, but defendant's objection to such testimony was sustained. This court has previously held that in the absence of a posted minimum speed limit, slow driving that does not affect traffic does not meet the "reasonable suspicion" standard. (*People v. Brand* (1979), 71 Ill. App. 3d 698, 700-01, 390 N.E.2d 65, 68.) Given the record in this case, the trial court did not err in granting defendant's petition.

The record of the hearing on defendant's motion to suppress evidence contains additional testimony. Officer Gott further testified at the second hearing that she considered defendant's activity at the first convenience store, which was located in a mall where an armed robbery had taken place and was in a high crime-rate area.

This expanded record presents facts similar to those recited in *People v. Deppert* (1980), 83 Ill. App. 3d 375, 403 N.E.2d 1279. In that case, the defendant, who was driving very slowly, turned into a railroad parking lot, turned around and was headed back towards the road when he was stopped by the police. (*Deppert*, 83 Ill. App. 3d at 376-78, 403 N.E.2d at 1280-81.) The police officer in *Deppert* testified that there had been two burglaries in that neighborhood in the previous two weeks. (*Deppert*, 83 Ill. App. 3d at 377, 403 N.E.2d at 1281.) The police officer also testified that he stopped defendant to see if defendant needed assistance, and he did not mention any burglaries in his report or prior testimony. (*Deppert*, 83 Ill. App. 3d

at 378, 403 N.E.2d at 1281.) The trial court denied Deppert's motion to suppress. This court reversed, noting that defendant's activities were consistent with day-to-day legal activities and while the area had had two recent burglaries, it did not have a high crime rate. *Deppert*, 83 Ill. App. 3d at 381-82, 403 N.E.2d at 1283.

This case also differs from *Deppert* in at least three respects. First, in this case, it is clear that the same trial judge presided over the hearing on the petition as well as the hearing on the motion. This first difference is important because the identity of parties in both proceedings permits a trial judge to take judicial notice of findings made in the first proceeding. (See *People v. Free* (1986), 112 Ill. 2d 154, 165, 492 N.E.2d 1269, 1274.) Moreover, in certain cases, a trial court may take judicial notice of facts *sua sponte*, so long as the trial court discloses the sources of the facts before the close of evidence. (*People v. Speight* (1991), 222 Ill. App. 3d 766, 772, 584 N.E.2d 392, 396, *rev'd on other grounds* (1992), 153 Ill. 2d 365, 606 N.E.2d 1174.) The record of the second hearing here contains a discussion between counsel and the trial court of the earlier proceeding.

Second, the trial court here granted the motion to suppress. The difference is important because the burden is now upon the State, rather than defendant, to show error. The deference accorded to a trial court as the finder of fact, particularly on issues of witness credibility, works in favor of the defendant as the prevailing party at trial.

Third, Officer Gott testified at the second hearing that the first convenience store was in a high crime-rate area. This difference is important because Officer Gott did not testify at the first hearing that she factored defendant's activities—other than slow driving—into her decision to stop defendant.

The *Deppert* court assumed that the recent burglaries made the police officer suspicious of defendant, despite the fact that the officer had not mentioned it previously. This assumption was proper, given the role of the trial court in weighing witness credibility and the trial court's ruling denying the motion to suppress. In this case, the trial court granted the motion to suppress, which must reflect the trial court's assessment of the additional testimony in light of the testimony adduced at the first hearing. Indeed, the trial court, in granting the motion, stated that the convenience store was lit—a finding that could be reached only by reference to defendant's testimony during the hearing on the petition. Given this record, it appears that the trial court rejected the testimony that Officer Gott's decision was influenced by the high crime-rate area in which the first convenience store was located. This court generally does not reverse

cases by reweighing testimony. Consequently, this case falls within the scope of *Deppert* and will not be reversed.

For all of the aforementioned reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.