**The STATE of Ohio, Appellee,**

v.

**BACHER, Appellant.**

[Cite as *State v. Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–050730 and C–050731.

Decided Feb. 23, 2007.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Matthew T. Ernst, for appellant.

MARK P. PAINTER, Presiding Judge.

{¶ 1} This appeal challenges the denial of a suppression motion that led to a no-contest plea and a conviction for operating a vehicle under the influence ("OVI").[1]  We reverse.

## I.  At a Snail's Pace

{¶ 2} The following facts are provided both to inform the reader and to refresh defendant-appellant Brandon Bacher's recollection of his arrest.  Around 3:00 a.m., Bacher was driving north on Interstate 71, traveling about 23 m.p.h. below the posted speed limit of 65, when Officer Allison Norton pulled him over.

{¶ 3} That night, Officer Norton had been on radar patrol when she saw Bacher traveling very slowly.  She first monitored him at 22 and then 23 m.p.h. under the posted speed limit.  Because Bacher was driving so slowly, Norton immediately initiated a traffic stop.  On questioning Bacher, Norton was met with a strong odor of alcohol.  After failing sobriety tests, Bacher was arrested for OVI.

{¶ 4} Because this case concerns whether Norton's initial traffic stop was supported by probable cause or a reasonable suspicion, the facts after the initial stop are inconsequential.  But given the arrogance of Bacher's post-arrest antics, we feel compelled to address some of his apparent delusions, misconceptions, and concerns: (1) this decision was not reached as a result of influence on the part of Bacher's "father in law, Judge Spiegel"; (2) to our knowledge, Officer Norton has not been fired from the Blue Ash Police Department for pulling Bacher over, as was threatened; (3) Bacher's in-cruiser statements that he "was not driving all that fast" were exceedingly candid—especially when Officer Norton told him numerous times that she had pulled him over for driving too slowly, not for

---

1. R.C. 4511.19(A)(1).

speeding; (4) Bacher questioned Officer Norton about impounding *him*, but in Ohio, we impound cars and incarcerate people; (5) the record fails to show that Bacher was in any way being treated like a "terrorist"—in fact, Officer Norton was quite attentive to Bacher's needs despite his brash demeanor; and (6) contrary to Bacher's belief, the Ohio Revised Code provides that vehicles be impounded by the Bureau of Motor Vehicles and not the American Automobile Association. Clearly, Bacher "had the right to remain silent, but not the ability." [2]

## II. The Fourth Amendment Applies Even to Fools

{¶ 5} The issue is whether a driver's slow speed alone can constitutionally support a reasonable suspicion to stop the driver for OVI. We hold that absent accompanying circumstances to sustain the stop, it cannot.

{¶ 6} The trial court opined that Officer Norton's stop was "more like an investigative stop" than a "suspicion that [Bacher was] impaired at that time." But the record does not support that conclusion. Even so, investigative detentions or stops are subject to a Fourth Amendment analysis.

{¶ 7} The review of a suppression ruling presents a mixed question of law and fact.[3] Accepting the properly supported findings of the trier of fact as true, an appellate court must determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case.[4]

{¶ 8} The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures. Unless an exception applies, warrantless searches are per se unreasonable.[5] One exception has been enunciated by the United States Supreme Court in *Terry v. Ohio*, where a citizen's right to be free from unreasonable searches was balanced against the need to protect the police and the public.[6] The protection against unreasonable searches and seizures afforded by the Fourth Amendment *Terry* analysis extends

---

2. See Ron White, I Had the Right to Remain Silent * * * But I Didn't Have the Ability (2006).

3. See *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; *Cincinnati v. Blair*, 1st Dist. Nos. C–060045 and C–060046, 2006-Ohio-6619, 2006 WL 3690685.

4. See *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141.

5. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

6. Id.

to an investigative traffic stop, and that stop is permissible only if it is supported by reasonable suspicion.[7]

{¶ 9} A reasonable suspicion represents something less than probable cause, but more than an "inchoate and unparticularized suspicion or 'hunch.' "[8] As Justice Brennan noted, "Action based merely on whatever may pique the curiosity of a particular officer is the antithesis of the objective standards requisite to reasonable conduct * * *."[9] In short, there must be " 'some minimal level of objective justification' " for the stop.[10]

{¶ 10} When assessing whether reasonable suspicion existed, a reviewing court must consider the totality of the circumstances to determine whether the officer had a particularized and objective basis for suspecting wrongdoing.[11] Even legal conduct, under some circumstances, may justify a reasonable suspicion that criminal activity is afoot.[12] But reasonable suspicion generally requires that there be a *series* of innocent acts that when viewed together, give an officer justification for further investigation.[13] The standard is an objective one based on the particular circumstances of the case.[14]

{¶ 11} In this case, Officer Norton testified that Bacher's speed "caught [her] attention" and that the only other driving pattern that caught her attention was that Bacher "was hesitant to pull over [and that] it took him approximately two tenths of a mile to stop." But that occurred after Norton had decided to stop Bacher. When asked if she noticed anything else about Bacher's driving pattern, Norton replied, "[N]o."

{¶ 12} The state contends that Bacher's slow speed, in combination with the late hour, amounted to reasonable suspicion. But we are unable to find authority

---

7. See *United States v. Arvizu* (2002), 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740; *United States v. Jacob* (C.A.6, 2004), 377 F.3d 573.

8. *State v. Ramey* (1998), 129 Ohio App.3d 409, 717 N.E.2d 1153, quoting *Terry* at 28, 88 S.Ct. 1868, 20 L.Ed.2d 889.

9. *Delaware v. Prouse* (1979), 440 U.S. 648, 654–655, 99 S.Ct. 1391, 59 L.Ed.2d 660 (Brennan, J., dissenting).

10. Id., quoting *Immigration Naturalization Serv. v. Delgado* (1984), 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247.

11. See *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621.

12. See *Ramey*, 129 Ohio App.3d 409, 717 N.E.2d 1153, citing *United States v. Sokolow* (1989), 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1.

13. Id.

14. See, generally, *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271.

to support that conclusion. Other jurisdictions have held that slow travel alone does not create a reasonable suspicion of OVI.[15] Generally, an officer's suspicion is reasonable when a driver is traveling well below the speed limit and is engaged in other unusual driving behavior that would suggest intoxication, such as swerving,[16] driving on the shoulder of the road,[17] straddling a lane,[18] crossing the center line,[19] or weaving.[20]

{¶ 13} Driving 42 and 43 m.p.h. in a 65–m.p.h. zone is not illegal or improper unless there is a posted minimum speed limit. Officer Norton ultimately cited Bacher for violating Ohio's slow-speed statute.[21] But the slow-speed statute requires that the slow-moving vehicle "impede or block the normal and reasonable movement of traffic."[22] Our review of the record convinces us that the trial court was correct in concluding that there was no evidence supporting a reasonable suspicion that Bacher was impeding or blocking traffic. Perhaps if Officer Norton had not immediately initiated the stop, but rather followed Bacher for a more extended period of time, the requisite suspicion might have developed. But that did not happen. Because the record is devoid of circumstances suggesting criminal activity, Officer Norton's suspicion was not reasonable under the Fourth Amendment.

{¶ 14} We also note the community-caretaking exception to the Fourth Amendment's warrant requirement. Under this exception, officers have a duty to aid drivers in distress.[23] The community-caretaking exception is limited

---

**15.** *State v. Rincon* (Nev.2006), 147 P.3d 233; *Faunce v. State* (Fla.App.2004), 884 So.2d 504; *Raulerson v. State* (1996), 223 Ga.App. 556, 479 S.E.2d 386; *State v. Wiese* (Iowa 1994), 525 N.W.2d 412, overruled on other grounds in *State v. Cline* (Iowa 2000), 617 N.W.2d 277; *State v. Rotkvich* (1993), 256 Ill.App.3d 124, 195 Ill.Dec. 424, 628 N.E.2d 888; *State v. Brown* (N.D.1993), 509 N.W.2d 69; but, see, *State v. Rinehart* (S.D.2000), 617 N.W.2d 842.

**16.** *Wells v. State* (Ind.App.2002), 772 N.E.2d 487, 490.

**17.** *United States v. Sanchez–Pena* (C.A.5, 2003), 336 F.3d 431, 437.

**18.** *United States v. Botero–Ospina* (C.A.10, 1995), 71 F.3d 783, 788.

**19.** *United States v. Bertrand* (C.A.9, 1991), 926 F.2d 838, 844.

**20.** *Eastlake v. Reithmann,* 11th Dist. Nos. 2003–L–076 and 2003–L–079, 2005-Ohio-137, 2005 WL 89392; *Veal v. State* (2005), 273 Ga.App. 47, 614 S.E.2d 143, 145; *Esteen v. State* (Fla.App.1987), 503 So.2d 356, 357–358.

**21.** R.C. 4511.22.

**22.** Id.

**23.** See *Cady v. Dombrowski* (1973), 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706.

in application and scope. The exception applies only where an officer initiates a stop based on a reasonable belief that a slow driver is in need of emergency assistance.[24] The scope of the exception is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."[25] In this case, the record contains nary a whisper of evidence or testimony showing that Bacher required care, and, consequently, the community-caretaking exception was not applicable to these facts.

{¶ 15} Because slow driving alone does not create a reasonable suspicion of OVI, we reverse the trial court's judgment and remand the cause for further proceedings in accordance with the law.

<div align="right">

Judgment reversed
and cause remanded.

</div>

HILDEBRANDT and WINKLER, JJ., concur.

RALPH WINKLER, J., retired, of the First Appellate District, sitting by assignment.

</div>

---

24. See *State v. Rinehart*, 617 N.W.2d 842; see, also, *State v. Mausling*, 11th Dist. No. 2005–G–2626, 2006-Ohio-1270, 2006 WL 687973.

25. See *Cady*, 413 U.S. at 441, 93 S.Ct. 2523, 37 L.Ed.2d 706.