The STATE of Ohio, Appellee

v.

STARKEY, Appellant.

[Cite as *State v. Starkey*, 183 Ohio App.3d 215, 2009-Ohio-3276.]

Court of Appeals of Ohio,
Fifth District, Ashland County.

No. 08 COA 033.

Decided July 1, 2009.

216

Richard P. Work II, Ashland Law Director, and W. David Montague, Assistant Director of Law, for appellee.

David Homer, for appellant.

HOFFMAN, Judge.

{¶ 1} Defendant-appellant, Jordan M. Starkey, appeals the August 21, 2008 judgment entry of the Ashland Municipal Court denying his motion to suppress evidence. Plaintiff-appellee is the state of Ohio.

### Statement of the Facts and Case

{¶ 2} On June 28, 2008, at 4:16 a.m., Ohio State Highway Patrol Trooper David Keener was traveling westbound on County Road 1302. Trooper Keener received a request for assistance from the Ashland County Sheriff's Department regarding a white male who had stopped in a driveway, was believed to be intoxicated, and was possibly walking down the road.

{¶ 3} As he approached the intersection of County Road 1302 and Township Road 753, Trooper Keener observed a vehicle stopped in the roadway. The vehicle was located in front of the stop sign, but before the actual intersection with County Road 1302. After observing the vehicle not moving, Trooper Keener

became suspicious. He drove toward the vehicle and observed two people sitting inside. He activated his pursuit lights, then proceeded to approach the vehicle. Trooper Keener observed the occupants of the vehicle having glassy, bloodshot eyes, and he smelled a strong odor of alcohol inside the vehicle.

{¶ 4} Appellant was later charged with possession of drug paraphernalia in violation of R.C. 2925.14 and possession of marijuana in violation of R.C. 2925.11(C)(3).

{¶ 5} Appellant filed a motion to suppress the evidence, contesting the legality of the stop and search. The trial court overruled the motion to suppress. As a result, appellant entered a plea of no contest to the drug-paraphernalia charge, and the state agreed to dismiss the possession-of-marijuana charge. The trial court proceeded with sentencing.

{¶ 6} Appellant now appeals the trial court's denial of his motion to suppress, assigning as error:

{¶ 7} "I. The trial court erred prejudicially by overruling the motion to suppress."

{¶ 8} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the judgment of the trial court for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger*. As the United States Supreme Court held in *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶ 9} In *Terry v. Ohio* (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21, 88 S.Ct. 1868. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph one of the syllabus.

{¶ 10} A person is seized in an investigatory stop when in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed he was not free to leave or was compelled to respond to questions. *State v. Taylor* (1995), 106 Ohio App.3d 741, 747–748, 667 N.E.2d 60.

{¶ 11} Trooper Keener testified at the suppression hearing:

{¶ 12} "A. We were—I was requested by the Sheriff's Department to assist, they had nobody available. It was a call of a white male that had stopped in a driveway, his vehicle was stopped in a driveway, it was reported that he was intoxicated and they, they didn't locate the subject at that time, they didn't know if he was on the property or if he walked down on the road.

{¶ 13} "Q. All right. So what were you doing then at 4:16 in the morning?

{¶ 14} "A. I was out looking for that male subject.

{¶ 15} "Q. All right. As you did so, was your attention drawn to any vehicular traffic in your vicinity?

{¶ 16} "A. Yes it was.

{¶ 17} "Q. Describe what you saw please, Trooper?

{¶ 18} "A. I was traveling westbound on Country Road 1302, I was approaching the intersection, of Township Road 753 and as I approached the intersection I saw the red Camaro, it turned out to be a red Camaro, there was a vehicle stopped at the intersection.

{¶ 19} "Q. All right. Describe where it was stopped in relation to the intersection itself, just where exactly was it if you can do that, please?

{¶ 20} "A.    The entire car length—it was about a car length past the Stop sign, it was between the edge of County Road 1302 and the Stop sign it was about—just over a car length there in distance.

{¶ 21} "Q.    So it was beyond the Stop sign, is what you're saying?

{¶ 22} "A.    Yes.

{¶ 23} "Q.    Was it actually into the roadway that you—that you were operating your vehicle on?

{¶ 24} "A.    No.

{¶ 25} "Q.    Now, if you would please, describe how far away you were from the vehicle when you made that observation, first of all?

{¶ 26} "A.    It was approximately a tenth of a mile.

{¶ 27} "Q.    Now, in that tenth of a mile, distance, please describe to the Court what you observed the vehicle do?

{¶ 28} "A.    Nothing, if just stopped, it stayed in the same location.

{¶ 29} "Q.    Well, what I want to find out from you, Trooper, is whether or not this vehicle had enough time to—this is a T intersection, I believe; is that correct?

{¶ 30} "A.    Yes, sir.

{¶ 31} "Q.    Whether the vehicle had enough time to turn right or left at the intersection before your immediate approach, which would make it a hazard to make a right or a left turn?

{¶ 32} "A.    Yes, as I was looking for this person walking and I was going slow, maybe 25, 30 miles per hour, I was going pretty slow.    I mean it was at least—about a tenth of a mile when I could first see the vehicle through the, I believe it was a cornfield, there's a field between—it would be on the south, it would be the northeast corner of the intersection.    And from the time that I first saw the vehicle, it was stopped and never moved that whole time as I approached slowly towards it.

{¶ 33} "Q.    So when you got up to the vehicle, what did you do then, please?

{¶ 34} "A.    As a pulled up the vehicle, I could see there were two occupants, the driver and the front seat passenger.    The driver, he looked to the left as I'm approaching on the left, he looked at me, very quickly he looked to his passenger and then he just looked straight ahead and just stared straight ahead and didn't, didn't do anything, just stayed there then.

{¶ 35} " * * *

{¶ 36} "Q. After you stopped—and what was your purpose in turning on your pursuit lights here in this case, at this location?

{¶ 37} "A. Ah, more for my safety, my vehicles was on 1302 the way, as I approached and stopped right there, my vehicle was out on the roadway.

{¶ 38} "Q. All right. So you did what after you stopped and approached these—the occupants of this vehicle?

{¶ 39} "A. I walked up to the driver's side and made contact with the driver.

{¶ 40} "Q. Who did you find that person to be, please?

{¶ 41} "A. It was the Defendant, Brandon, Brandon Curtis.

{¶ 42} "Q. Did you determine whether or not either of the individuals were the person—was the person that you were looking for?

{¶ 43} "A. Trooper Karr did later on.

{¶ 44} "Q. All right. You didn't'?

{¶ 45} "A. No.

{¶ 46} "Q. Well, describe to the Court then what observations you made of the occupants or the interior of this vehicle when you approached it?

{¶ 47} "A. As I talked to the driver, his eyes were glassy, ah, they were very bloodshot, they were almost completely red and there was a strong odor of an alcoholic beverage.

{¶ 48} "Q. Coming from him or the interior of the vehicle?

{¶ 49} "A. From him and the interior of the vehicle.

{¶ 50} " * * *

{¶ 51} "Q. Okay. And again, if I understand you correctly, you're conceding the fact that where they stopped was necessary for them to look down the road because of the standing corn, you would agree with that?

{¶ 52} "A. Yes.

{¶ 53} "Q. So they had to pull at least a car length beyond the Stop sign to peek around the corner so that they could see the direction you were coming from?

{¶ 54} "A. Yes.

{¶ 55} " * * * "

{¶ 56} In *State v. Bacher* (2007), 170 Ohio App.3d 457, 867 N.E.2d 864, the First District Court of Appeals held that slow driving did not amount to a reasonable suspicion of criminal activity,

{¶ 57} "In this case, Officer Norton testified that Bacher's speed 'caught [her] attention' and that the only other driving pattern that caught her attention was that Bacher 'was hesitant to pull over [and that] it took him approximately two tenths of a mile to stop.' But that occurred after Norton had decided to stop Bacher. When asked if she noticed anything else about Bacher's driving pattern, Norton replied, '[N]o.'

{¶ 58} "The state contends that Bacher's slow speed, in combination with the late hour, amounted to reasonable suspicion. But we are unable to find authority to support that conclusion. Other jurisdictions have held that slow travel alone does not create a reasonable suspicion of [operating a vehicle while intoxicated]. Generally, an officer's suspicion is reasonable when a driver is traveling well below the speed limit and is engaged in other unusual driving behavior that would suggest intoxication, such as swerving, driving on the shoulder of the road, straddling a lane, crossing the center line, or weaving." (Citations omitted.)

{¶ 59} Upon review of facts in this case as testified to by Trooper Keener, we find that the interaction between appellant and Trooper Keener rises to the level of an investigatory stop. As set forth above, Trooper Keener activated his pursuit lights prior to approaching the vehicle, and we find that a reasonable person, in view of all the circumstances surrounding the incident, would have believed he was not free to leave. We disagree with the trial court's characterization of the event as a consensual encounter. Trooper Keener's only suspicion of criminal activity was the driver's unreasonable delay in travel, which we find is not reasonable suspicion of criminal activity in light of the totality of these circumstances.

{¶ 60} Accordingly, appellant's sole assignment of error is sustained, and the judgment of the Ashland Municipal Court is reversed.

Judgment reversed.

Gwin, J., concurs.

Farmer, P.J., dissents.

Farmer, Presiding Judge, dissenting.

{¶ 61} I respectfully dissent from the majority's position that this was an investigatory stop. It is my opinion that the facts sub judice within the area of a police-citizen consensual encounter are not governed by the 4th Amendment standards.

{¶ 62} Specifically, there was not actual demand or show of force in this encounter. The trooper testified that appellant was already stopped at the stop

sign for an inordinate time. The trooper stopped his vehicle and activated the lights for his safety and not to seize or force appellant from movement.

{¶ 63} Once the officer approached appellant and smelled an odor of alcohol, the reasonable-suspicion test of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, comes into play, and there is a seizure.

{¶ 64} I would affirm the trial court's denial of the motion to suppress.