[Cite as *In re K.M.*, 2015-Ohio-4241.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: K.M. : APPEAL NOS. C-140764
C-140765
: C-140766
TRIAL NOS. 14-3876
: 14-3877
14-3878
:
*O P I N I O N.*
:

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: October 14, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Gordon Magella*, Assistant Public Defender, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

SYLVIA S. HENDON, Presiding Judge.

{¶1}     In this appeal, defendant-appellant K.M. challenges the trial court's denial of his motion to suppress and the sufficiency and the weight of the evidence supporting his adjudications for two counts of aggravated robbery with accompanying firearm specifications and carrying a concealed weapon.

{¶2}     Finding no merit to K.M.'s arguments, we affirm the judgments of the trial court.

*Facts and Procedure*

{¶3}     On April 30, 2014, Michael Frank and Holly Gruber were robbed as they walked along Joselin Avenue in Clifton at approximately 1:00 a.m.  A group of four African-American males wearing dark clothing jumped out and put guns to their heads while demanding their belongings.  Frank was struck in the face and kicked. He viewed the suspects fleeing in a vehicle that had been parked less than 100 yards away with a driver waiting inside, and he described the vehicle as an older "boat-looking like" sedan that was gold in color.  The suspects absconded with Gruber's purse and both Gruber's and Frank's cellular telephones.   Within minutes, Gruber and Frank flagged down Cincinnati Police Lieutenant Daniel Ogilvie, who was patrolling the area.   Lieutenant Ogilvie sent out a radio broadcast regarding the robbery.  In the broadcast, he described the suspects as three male blacks possibly in a gold sedan.

{¶4}     Cincinnati Police Specialist James Pike heard the broadcast while on patrol.  Shortly thereafter, he drove past a vehicle about a mile away from the scene of the robbery that caught his attention because of the number of occupants inside.

Specialist Pike initially described this vehicle as "whitish," although it was in fact blue. He attempted to catch up to the vehicle, but felt that it was eluding him. After requesting additional information, he received an update informing him that the suspects were wearing black hoodies, were approximately 19-24 years old, and had taken a black purse and two iphones. After obtaining this additional description, Specialist Pike "spotlighted" the vehicle to better see the occupants. The spotlighting revealed five male African-Americans in the vehicle, all wearing either dark or black clothing. Specialist Pike received no reaction to the spotlighting from any of the occupants. After requesting back up, he initiated a stop of the vehicle. K.M. was seated in the right rear passenger seat wearing a black sweatshirt.

{¶5} Cincinnati police officers Antonio Etter and Anthony Murphy recovered four firearms from the vehicle. Two weapons, including a loaded .40-caliber handgun, were found lying on the floorboard in front of the rear passenger seat. Two other weapons were found underneath the driver's seat. The purse and cellular telephones taken from Frank and Gruber were also found in the vehicle.

{¶6} Complaints were filed against K.M. in Hamilton County Juvenile Court charging him with carrying a concealed weapon and two counts of aggravated robbery with accompanying firearm specifications. K.M. filed a motion to suppress the traffic stop and all resulting evidence on the ground that the police did not have reasonable suspicion to stop the vehicle. A juvenile court magistrate denied K.M.'s motion to suppress. K.M. filed a motion to set aside that decision, which the trial court denied. Following a trial, K.M. was adjudicated delinquent by a magistrate on all charges. The trial court again overruled K.M.'s objections to the magistrate's decision and committed K.M. to the Ohio Department of Youth Services.

{¶7}   K.M. now appeals, raising three assignments of error for our review.

*Motion to Suppress*

{¶8}   In his first assignment of error, K.M. argues that the trial court erred in denying his motion to suppress.

{¶9}   Our review of the trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  We must accept the trial court's factual findings if they are supported by competent and credible evidence.   But we review de novo the application of the relevant law to those facts. *Id.*

{¶10}  To perform a lawful, warrantless stop of a vehicle, an officer must have a reasonable suspicion that a crime has occurred or will be imminently occurring. *See In re M.M.*, 1st Dist. Hamilton Nos. C-140628, C-140629, C-140630 and C-140631, 2015-Ohio-3485, ¶ 8.  Reasonable suspicion is less than probable cause, but requires more than an "inchoate and unparticularized suspicion." *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); s*ee also State v. Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864, ¶ 9 (1st Dist.).  To determine whether an officer had reasonable suspicion to stop a vehicle, we must look at the totality of the circumstances "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *In re M.M.* at ¶ 8, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶11} At the motion-to-suppress hearing, Specialist Pike was asked to enumerate what factors led him to stop the vehicle in which K.M. had been a passenger.  He explained that his suspicions were raised by the vehicle's proximity to the scene of the robbery, by the number of occupants in the vehicle, by the vehicle's

attempt to elude him, and by the occupants' complete lack of reaction upon being spotlighted inside the vehicle, which was not typical. He further explained that, although the radio broadcast had described a possibly gold-colored vehicle, he had stopped the suspect's blue vehicle because different lighting conditions can affect the perceived color of a car.

{¶12} Following our review of the record, we find that Specialist Pike had reasonable suspicion to stop the vehicle in which K.M. had been a passenger. We are not troubled by the officer's stoppage of a blue vehicle when the victims had described the car as gold. Specialist Pike correctly explained that lighting conditions can affect the perceived color of a vehicle. Specialist Pike himself described the vehicle as "whitish" in his initial broadcast, although it was in fact blue.

{¶13} Because Specialist Pike had reasonable suspicion to stop the vehicle, the trial court did not err in denying K.M.'s motion to suppress. The first assignment of error is overruled.

### Sufficiency and Weight

{¶14} In his second assignment of error, K.M. argues that his adjudications for aggravated robbery were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶15} K.M. was adjudicated delinquent for committing aggravated robbery under R.C. 2911.01(A)(1). This statute provides in relevant part that "[n]o person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶16} The evidence presented at trial established that Michael Gruber and Holly Frank were attacked by four African-American males in dark clothing. The attackers held guns to their heads, demanded their belongings, and fled with those belongings into a car that was parked nearby with a driver inside. Minutes later, K.M. was stopped in a vehicle that had five occupants and that contained Gruber's and Frank's belongings, and he was wearing dark clothing. Viewed in the light most favorable to the prosecution, this was sufficient to establish the elements of aggravated robbery beyond a reasonable doubt. *See State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶17} K.M.'s adjudications for aggravated robbery were likewise supported by the manifest weight of the evidence. Although K.M. did not testify, the evidence introduced at trial revealed that K.M. had stated in an interview following his arrest that he had been picked up by the other four robbery suspects right before they were stopped by the police. The trial court did not err in rejecting this statement and in determining that K.M. had participated in the robbery of Frank and Gruber. This was not the rare case in which the trier of fact lost its way and created such a manifest miscarriage of justice that K.M.'s adjudications must be reversed. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We hold that K.M.'s adjudications for aggravated robbery were supported by both the sufficiency and the weight of the evidence. The second assignment of error is overruled.

{¶18} In his third assignment of error, K.M. challenges the sufficiency of the evidence supporting his adjudication for carrying a concealed weapon. Carrying a concealed weapon is proscribed by R.C. 2923.12(A), which provides in relevant part that "[n]o person shall knowingly carry or have, concealed on the person's person or

concealed ready at hand * * * a handgun." K.M. was specifically charged with possession of a .40-caliber Bersa. This weapon was found lying on the floorboard in front of the rear passenger seat where K.M. had been seated.

{¶19} K.M. first argues that because the weapon was found in plain view on the floorboard, it had not been concealed on his person or concealed ready at hand. A weapon is concealed "if it is so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed." *State v. Davis*, 15 Ohio App.3d 64, 472 N.E.2d 751 (1st Dist.1984), paragraph one of the syllabus. And a weapon is "ready at hand" when it is "so near as to be conveniently accessible and within immediate physical reach." *State v. Davis*, 115 Ohio St.3d 360, 2007-Ohio-5025, 875 N.E.2d 80, ¶ 29, quoting *State v. Miller*, 2d Dist. Montgomery No. 19589, 2003-Ohio-6239, ¶ 14. The .40-caliber Bersa was found on the floorboard directly in front of the seat that K.M. had occupied. There is no question that the weapon was ready at hand. But we must determine whether the weapon was in fact concealed. All five occupants were removed from the vehicle before it was searched. Officer Murphy testified that he had searched the vehicle and had found the weapon in plain view on the rear passenger side floorboard. But the weapon's visibility after all suspects had been removed from the vehicle does not necessarily indicate that the weapon had not been concealed when the suspects were present in the car. "A concealed weapon may emerge into plain view for seizure purposes by the movement of a person or an object." *In re Robert B.*, 186 Ohio App.3d 389, 2009-Ohio-3644, 928 N.E.2d 746, ¶ 24 (2d Dist.), quoting *State v. Thornton*, 2d Dist. Montgomery No. 18545, 2001 Ohio App. LEXIS 1993, *9 (May 4, 2001). Viewing the evidence in the light most favorable to the prosecution, as we are required to do, we find that the

weapon would not have been discernable when K.M., along with two others, had been seated in the backseat of the two-door vehicle.

{¶20} K.M. next argues that the evidence failed to establish that he had constructively possessed the weapon. A weapon is constructively possessed "when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Thomas*, 1st Dist. Hamilton No. C-020282, 2003-Ohio-1185, ¶ 9. K.M. contends that, other than his presence in the vehicle, there was no evidence linking him to the weapon. We are not persuaded. The evidence established that K.M. was one of four assailants that attacked and robbed Michael Gruber and Holly Frank at gunpoint. And the weapon was found directly in front of the seat that K.M. had occupied. The state relied on more than mere presence to link K.M. to the weapon, and we hold that his adjudication for carrying a concealed weapon was supported by sufficient evidence. *See Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶21} K.M.'s third assignment of error is overruled. The judgments of the trial court are, accordingly, affirmed.

Judgments affirmed.

**FISCHER** and **MOCK, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

8