[Cite as *State v. Whitfield*, 2020-Ohio-2929.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                          :          APPEAL NO. C-190591
                                                   TRIAL NO.   B-1901131
    Plaintiff-Appellant,            :

                                                   *O P I N I O N.*

  vs.                                   :

LAWAYNE WHITFIELD,                      :

    Defendant-Appellee.             :



Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 13, 2020



*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant
Prosecuting Attorney, for Plaintiff-Appellant,

*Timothy J. McKenna,* for Defendant-Appellee.

**CROUSE, Judge.**

{¶1}    Defendant-appellee LaWayne Whitfield was the passenger in a car stopped by Cincinnati Police Officers Oscar Cuiranek and Thomas Wells for a traffic violation.  The officers called for a K9 team to conduct a "sniff" around the car, and asked the driver and Whitfield to step out of the car.  When Whitfield stepped out of the car, he was frisked and then searched, whereupon officers discovered ten grams of cocaine in his possession.  Whitfield filed a motion to suppress the cocaine, which, after a hearing, was granted by the trial court.

{¶2}    The state has appealed, arguing in one assignment of error that the trial court erred in granting Whitfield's motion to suppress.  For the reasons discussed below, we overrule the state's assignment of error, and affirm the judgment of the trial court.

### Factual Background

{¶3}    The trial court held a hearing on the motion to suppress, where it considered the testimony of officers Cuiranek, Wells, and Jason Hesselbrock, as well as footage of the encounter from their body cameras, which was admitted as exhibits.

{¶4}    Officer Cuiranek testified that he and Wells were part of a P.I.V.O.T.[1] squad assigned to patrol "hot spot," high-violence areas in the city of Cincinnati. Cuiranek testified that they were looking to initiate a traffic stop that could lead to the investigation of more serious crimes.  In this case, they initiated a traffic stop on the vehicle due to excessive window tinting.  Cuiranek approached the driver's side, and Wells approached the passenger's side.  Whitfield was in the passenger seat.

---

[1] Placed Based Investigations of Violent Offender Territories ("P.I.V.O.T.") uses crime data analysis to identify and police small areas where violence has been chronic and sustained. https://www.cincinnati-oh.gov/police/community-involvement/pivot/ (accessed May 6, 2020).

Cuiranek asked the driver and Whitfield for their driver's licenses, and then, after a brief conversation with the driver, Cuiranek asked if they had been smoking marijuana. Whitfield responded that he had smoked marijuana earlier in the day, but not in the car. As Cuiranek walked back to his patrol car, he called for a drug sniffing K9 team. Cuiranek testified that he had smelled a weird scent coming from the car, but he was not 100 percent sure if it was marijuana, so he called a K9 team to the scene to confirm the presence of marijuana in the car.

{¶5} While waiting for the K9 team to arrive, Wells stood by the passenger side of the stopped vehicle, occasionally speaking with Whitfield and the driver. Wells testified that he smelled marijuana coming from the car. Officer Hesselbrock and his K9 arrived approximately 15 minutes after the encounter began. Wells told both the driver and Whitfield to step out of the car. Hesselbrock testified that this was standard procedure before police conducted a sniff using a K9 for the safety of the officers and the occupants. Hesselbrock approached the driver's side and escorted the driver to the sidewalk without frisking her. He testified that he did not smell any marijuana.

{¶6} Wells testified that when officers order the occupants out of a car during a traffic stop, they frisk the occupants to make sure they don't possess any weapons. After Whitfield stepped out of the car, Wells frisked him. During the frisk, Wells told Whitfield that he smelled "a little something" and asked Whitfield if he had marijuana on him. As he frisked Whitfield's leg, Wells said "there's weed right there." Wells testified that he had felt a "hard lump on the right side, inside of [Whitfield's] leg," which felt like a hard ball of marijuana. Wells alerted Cuiranek, who put Whitfield in handcuffs and then reached into Whitfield's pockets and

retrieved a baggy of ten grams of cocaine and a scale. After officers found the cocaine and scale, Whitfield told the officers that there was a bag of marijuana under the passenger's seat. Officer Hesselbrock retrieved the marijuana, which was hidden under the passenger seat.

{¶7} Whitfield filed a motion to suppress the evidence seized as a result of the search of his person. The trial court granted Whitfield's motion to suppress, stating in its decision that "there was no indication that Whitfield was engaged in any illegal, much less threatening behavior prior to the search of, and discovery of drugs on his person." The court held that "there was no identifiable odor of marijuana, no suspicious behavior, or illegal activity being conducted by Whitfield that gave the Officer's [sic] probable cause to search his person."

### Sole Assignment of Error

{¶8} An appellate court reviews a motion to suppress as a mixed question of law and fact. *State v. Showes*, 1st Dist. Hamilton No. C-180552, 2020-Ohio-650, ¶ 9. "We must accept the trial court's findings of fact if they are supported by competent and credible evidence, but we review de novo the application of the relevant law to those facts." *Id.*

{¶9} Whitfield concedes that the traffic stop and detention for purposes of bringing in the K9 unit were both lawful. He takes issue with being ordered out of the car, frisked, and then searched. Because we find that the frisk was unlawful, we do not reach the merits of his other arguments.

{¶10} The Fourth Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution, prohibit "unreasonable searches and seizures." "Unless an exception applies, warrantless searches are per se unreasonable." *State v.*

*Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864, ¶ 8 (1st Dist.). "Evidence is inadmissible if it stems from an unconstitutional search or seizure." *Showes* at ¶ 11, quoting *Wong Sun v. United States,* 371 U.S. 471, 484-485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The burden of persuasion is on the state to show the validity of a warrantless search. *State v. Ward*, 2017-Ohio-8141, 98 N.E.3d 1257, ¶ 13 (1st Dist.).

{¶11} The state first argues that the trial court's determination that there was no identifiable odor of marijuana is not supported by the record because two officers testified that they smelled what they believed was marijuana. The state contends that due to the smell of marijuana, the search of Whitfield's person was justified under *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000) (holding that "exigent circumstances existed to justify the warrantless search of defendant's person once [the officer] had probable cause based upon the odor of marijuana detected on the defendant").

{¶12} "When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and the evidence submitted before the trial court." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witness' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record." *State v.*

*Woods*, 2018-Ohio-3379, 117 N.E.3d 1017, ¶ 19 (5th Dist.), citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).

{¶13} Here the record contains competent, credible evidence that supports the trial court's conclusion that there was "no identifiable odor of marijuana." One officer testified that he "smelled a weird smell coming out of the car, but [he] wasn't a hundred percent sure if it was a marijuana smell." A second officer testified that he smelled marijuana. A third officer testified that he did not smell marijuana. The trial court considered the surrounding circumstances of the stop and all of the testimony, viewed the body camera footage of all three officers, and made a determination that there was "no identifiable odor of marijuana." After a thorough review of the record, we cannot say that there was no competent, credible evidence to support the trial court's conclusion.

{¶14} Accepting the trial court's factual finding as true, we turn to the state's argument that the frisk of Whitfield was legal under *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, a police officer is permitted to conduct a limited frisk of a person if the officer reasonably believes that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others." *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993), quoting *Terry* at 24. An officer must have a reasonable, objective basis to conduct the frisk. *Showes*, 1st Dist. Hamilton No. C-180552, 2020-Ohio-650, at ¶ 12. The officer "must articulate specific facts which would lead a reasonable person to conclude that the person being investigated is armed and dangerous." *Id.*

{¶15} In its brief, the state contends that Whitfield waived the right to challenge the frisk on appeal by not challenging it in his motion to suppress or during the suppression hearing. We disagree. Although perhaps not the main thrust of his argument before the trial court, Whitfield sufficiently challenged the frisk for purposes of preserving his right to raise the issue on appeal.

{¶16} Cuiranek and Wells initiated a traffic stop for excessive window tinting. Wells testified that it is standard procedure for officers to remove occupants from a vehicle before a K9 team conducts an "open air sniff" around the vehicle. Wells testified that for the safety of the officers involved, once an individual is removed from a vehicle during a traffic stop, it is "typical" for officers to frisk the individual to ensure that the individual does not possess any weapons. However, to satisfy the *Terry* exception to the warrant requirement, an officer must be able to articulate specific facts that would lead a reasonable person to conclude that the individual under investigation is armed and dangerous. *Showes* at ¶ 12.

{¶17} The traffic stop was for excessive window tinting. None of the officers testified to any furtive movements or suspicious behavior by Whitfield or the driver. In fact, Wells's body camera footage showed the driver and Whitfield calmly waiting in the car while police waited for a K9 team to arrive. The state has failed to show that the warrantless search was legally justified. Its sole assignment of error is overruled.

### *Conclusion*

{¶18} The state's assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

      The court has recorded its own entry on the date of the release of this opinion.