# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Clements*, 2012 IL App (3d) 110213

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellant, v. JASON W. CLEMENTS, Defendant-Appellee. |
| District & No. | Third District<br>Docket Nos. 3-11-0213, 3-11-0407 cons. |
| Filed | September 5, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant was not seized when, as he approached a roadside safety checkpoint at a high rate of speed, an officer waved his flashlight at defendant and shouted at him to slow down and defendant pulled over and parked his car, even though he was not one of the "every third vehicles" intended to be stopped, and he remained at the checkpoint several minutes until the officer approached his car and made observations that led to his DUI arrest, the circumstances of the case gave the officer an articulable basis to direct defendant to slow down, the resulting stop was valid in view of defendant's traffic violation, and the grant of defendant's petition to rescind the summary suspension of his license and his motion to suppress evidence was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, Nos. 10-MR-96, 10-DT-221; the Hon. William S. McNeal, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Gary L. Spencer, State's Attorney, of Morrison (Terry A. Mertel and Thomas D. Arado, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel A. Huffman, of Nelson Kilgus Richey Huffman & Buckwalter-Schurman, of Morrison, for appellee.

Panel

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1     On October 31, 2010, defendant, Jason W. Clements, stopped his vehicle at a roadside safety checkpoint, and several minutes later an officer approached defendant's parked car. Based on the officer's observations, including a preliminary breath test and defendant's admission to the officer he had consumed alcohol, defendant was arrested for driving under the influence (DUI) in violation of sections 11-501(a)(1) and 11-501(a)(2) of the Illinois Vehicle Code (the Code), and issued a notice of statutory summary suspension. 625 ILCS 5/11-501(a)(1), (a)(2), 11-501.1 (West 2010). The trial court granted defendant's petition to rescind the statutory summary suspension of his driver's license (625 ILCS 5/2-118.1(b) (West 2010)) and defendant's motion to suppress evidence. The State appeals. We reverse and remand.

¶ 2                                    FACTS
¶ 3     On October 31, 2010, defendant stopped his vehicle within the boundaries of a checkpoint, conducted by the Illinois State Police, after trooper Vaughn Rhodes shouted at defendant to slow down. Three to five minutes later, defendant's vehicle remained parked at the checkpoint, and Rhodes approached defendant's vehicle after he finished processing another vehicle. While speaking with defendant, the officer noticed the odor of alcohol and defendant admitted consuming alcohol. A preliminary breath test revealed defendant's blood alcohol content was 0.175. The officer subsequently arrested defendant for DUI in violation of sections 11-501(a)(1) and 11-501(a)(2), and issued a notice of statutory summary suspension. 625 ILCS 5/11-501(a)(1), (a)(2), 11-501.1 (West 2010).

¶ 4     On January 18, 2011, the court conducted a hearing on defendant's petition to rescind the statutory summary suspension. At the summary suspension hearing, Rhodes testified that on October 31, 2010, he was assigned to assist at a checkpoint located on Illinois Route 30, a two-lane highway for eastbound and westbound traffic. According to the officer, the

established protocol for the checkpoint required the officers to stop every third vehicle approaching the location from either direction of travel. Rhodes testified there were between six and eight uniformed State Police troopers working at the checkpoint that night. According to Rhodes, at least two of the police vehicles had their overhead oscillating lights activated and there were posted signs alerting oncoming motorists of the approaching checkpoint.

¶ 5    Rhodes testified that at approximately 3:22 a.m. on October 31, 2010, he was on the side of the road, speaking to the driver of another stopped vehicle, when defendant's vehicle approached the checkpoint at a high rate of speed. Concerned, Rhodes turned away from the driver he was speaking to, faced the roadway, waved his flashlight, and shouted at defendant to slow down. Rather than simply reducing his speed, defendant pulled over and parked his vehicle. Defendant was not the third oncoming car approaching the checkpoint.

¶ 6    Rhodes observed defendant's car remained parked at the checkpoint for three to five minutes while Rhodes finished processing the other motorist. Consequently, Rhodes approached defendant's vehicle, which remained parked within the boundaries of the checkpoint, and Rhodes made certain observations which resulted in defendant's arrest for DUI.

¶ 7    Defendant argued to the trial court that the traffic stop violated his fourth amendment rights. Defendant claimed his rights were violated because his vehicle was not the third vehicle and he did not commit a traffic violation prior to stopping at the checkpoint.

¶ 8    The trial court found Rhodes acted properly and did not have a subjective intent to stop defendant's vehicle. However, the court found defendant was seized because a reasonable person would not have felt free to travel through the checkpoint, without stopping, based on Rhodes's conduct. Thus, the trial court ordered the rescission of defendant's summary suspension. On February 10, 2011, the State filed a motion to reconsider, which the trial court denied.

¶ 9    On May 19, 2011, defendant filed a motion to suppress evidence. The next day, the court conducted a hearing on the motion. At the hearing, Rhodes testified he did not know exactly how fast defendant was traveling through the checkpoint or whether defendant's speed was over the posted speed limit. Nonetheless, presumably based on the road conditions present at the checkpoint, the officer concluded defendant's rate of speed was too fast and verbally directed him to slow down.

¶ 10    After hearing the evidence, the trial court allowed defendant's motion to suppress. The trial court found a seizure occurred for fourth amendment purposes because a reasonable person in defendant's position would not have felt free to leave. Furthermore, the court determined the encounter was improper because defendant was not traveling in a vehicle which should have been selected for a random inspection according to the established checkpoint procedures, nor did the officer have reasonable suspicion of a criminal activity before he approached and spoke to defendant at the scene. The State appeals.

¶ 11                                    ANALYSIS
¶ 12    The State contends the trial court erred by granting both defendant's petition to rescind

the summary suspension and his motion to suppress. The State's arguments regarding both the petition and motion are similar. Specifically, the State argues defendant's encounter with Rhodes was consensual and does not qualify as a seizure because defendant voluntarily stopped his vehicle within the checkpoint. Alternatively, the State argues even if defendant was seized, Rhodes had reasonable suspicion to stop the vehicle because Rhodes observed defendant traveling at a high rate of speed through a checkpoint. Furthermore, the State contends the seizure was reasonable because Rhodes was acting in a community caretaker capacity when he approached defendant's vehicle.

¶ 13    A *de novo* standard of review applies to the ultimate determination of whether the petition to rescind the statutory summary suspension or motion to suppress should have been granted, but we will defer to the trial court's findings of fact, unless they are against the manifest weight of the evidence. *People v. Wear*, 229 Ill. 2d 545 (2008); *People v. Luedemann*, 222 Ill. 2d 530 (2006). We first address the issue of whether defendant was seized as a result of Officer Rhodes's conduct. Then, assuming *arguendo* defendant was seized, we will consider whether the officer had a reasonable suspicion of criminal activity that would justify stopping defendant's vehicle.

¶ 14                    I. Whether Defendant Was Seized

¶ 15    The fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution guarantee citizens the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. An individual "may not be lawfully seized without reasonable, objective grounds to support the seizure." *People v. Davenport*, 392 Ill. App. 3d 19, 27 (2009).

¶ 16    To determine whether the interaction between a law enforcement officer and a motorist qualifies as a seizure for fourth amendment purposes, we must objectively consider whether, in light of the circumstances surrounding the incident, a reasonable, innocent person would have felt free to decline the officer's requests or would have felt free to terminate the encounter. *United States v. Mendenhall*, 446 U.S. 544 (1980); *Luedemann*, 222 Ill. 2d 530. After the officer requests a motorist to stop, certain factors that may be considered to determine whether a seizure occurred include: (1) the threatening presence of several police officers; (2) an officer's display of a weapon; (3) physical touching of an individual by an officer; and (4) use of language or tone indicating compliance with some directive was compelled. *Id.*

¶ 17    We emphasize that the first objective, but threshold, requirement is whether an officer made a *request* for a motorist to stop, or whether the driver presented sufficient evidence conclusively establishing he involuntarily stopped based on his perception of the officer's actions. Neither circumstance was presented by the evidence submitted to the trial court in support of either defendant's petition to rescind the statutory summary suspension or defendant's motion to suppress.

¶ 18    As noted by the dissent, the trial court's findings are critically important in this case. Here, the court did not make a finding that defendant *involuntarily* stopped his vehicle that night. Instead, the trial court specifically found Rhodes did not intend to stop defendant's

vehicle. This finding is supported by the record and is not challenged on appeal. It is clear from Rhodes's undisputed testimony that the officer merely gestured with his flashlight and shouted "slow down." Rhodes never ordered defendant to stop. Furthermore, according to the evidence presented by the defense, no other officer pursued defendant or directed him to stop.

¶ 19 The precise reason defendant stopped his vehicle and remained at the checkpoint is unknown because defendant did not testify during the hearing on either the petition to revoke the statutory summary suspension or the motion to suppress. Without defendant's testimony indicating he first observed Officer Rhodes gesture with a flashlight and then felt compelled to stop, the record does not support an inference that defendant involuntarily stopped his vehicle based on police conduct. The facts presented to the trial court support multiple, equally plausible inferences that defendant did not notice Officer Rhodes but may have voluntarily stopped out of an abundance of caution or confusion or due to other difficulties.

¶ 20 The burden is on defendant to establish a *prima facie* case for rescission of a summary suspension. *People v. Orth*, 124 Ill. 2d 326, 336 (1988). Defendant alleged the police did not have authority to stop his vehicle. Here, the court unequivocally found this officer did not intend to stop defendant's vehicle, and defendant did not present testimony establishing he *involuntarily* stopped his vehicle within the roadblock. Thus, it matters not whether this defendant or some other reasonable person might have remained within the roadblock after *voluntarily* stopping his vehicle. Defendant's testimony regarding his thought process likely would have helped explain why a reasonable person in defendant's position would not have felt free to leave. See *People v. Brownlee*, 186 Ill. 2d 501, 519 (1999) (stating that, while the test to determine whether a seizure occurred is an objective one, a driver's subjective reaction can be important in assessing the *Mendenhall* factors).

¶ 21 Without some evidence Rhodes intended to detain defendant or some evidence that defendant actually perceived Rhodes's actions required defendant to *stop*, we conclude an investigatory stop did not occur in this case. Moreover, defendant did not contest his detention for purposes of the DUI investigation once the officer approached defendant several minutes later, after defendant stopped within the boundaries of the roadblock. Accordingly, we hold defendant was not seized.

¶ 22 II. Whether Rhodes Had a Reasonable Suspicion of Criminal Activity

¶ 23 A valid investigatory stop occurs when the officer creating the seizure had a reasonable suspicion, based upon specific and articulable facts, of criminal activity to justify the stop at issue. *Terry v. Ohio*, 392 U.S. 1 (1968); *People v. Greco*, 336 Ill. App. 3d 253 (2003). Generally, a traffic violation provides a sufficient basis for a traffic stop. *People v. Rotkvich*, 256 Ill. App. 3d 124 (1993). A seizure does not violate the fourth amendment unless the seizure was unreasonable. *People v. Bartley*, 109 Ill. 2d 273 (1985).

¶ 24 While the trial court found Rhodes did not subjectively intend to stop defendant at the checkpoint, had Rhodes intended to stop defendant, the record reveals Rhodes would have had an ample basis to formulate an intention to stop defendant and require him to remain at the checkpoint based on the officer's observations of a violation of section 11-907 of the

Code. 625 ILCS 5/11-907(c)(2) (West 2010). The record reveals there were multiple squad cars parked at the checkpoint, some with activated oscillating lights, and at least one other motorist located on the side of the roadway with Rhodes standing nearby. Under these circumstances, the Code requires a driver, such as defendant in this case, to slow down, proceed with caution, and then maintain a *safe* speed for the road conditions present when approaching a stationary emergency vehicle, such as those present on the roadway on the night of defendant's arrest. 625 ILCS 5/11-907(c)(2) (West 2010). Obviously, Rhodes's belief defendant was driving too fast was not based on the posted speed limit, but rather, this belief was related to valid safety considerations resulting from the presence of multiple emergency vehicles and other traffic conditions on the roadway due to the checkpoint itself.

¶ 25    After observing defendant approach the checkpoint at an unsafe speed, we conclude Rhodes had an articulable basis to direct the car to slow down, which we will assume, for purposes of this appeal, caused defendant to stop. Therefore, even if we assume Rhodes intended to stop defendant, which is contrary to the court's finding, the detention constituted a valid traffic stop based on the traffic violation Rhodes witnessed before shouting at defendant to slow down.

¶ 26    Since this issue is dispositive, it becomes unnecessary to address the State's argument Rhodes was acting in a community caretaker capacity when he approached a driver who stopped at the roadblock without being directed to do so. Accordingly, we reverse the trial court's grant of defendant's petition to rescind and motion to suppress, and we remand the cause for further proceedings.

¶ 27                                        CONCLUSION

¶ 28    For the foregoing reasons, the judgment of the trial court of Whiteside County is reversed, and the cause is remanded for further proceedings.

¶ 29    Reversed and remanded.

¶ 30    JUSTICE McDADE, dissenting.

¶ 31    The majority has reversed and remanded the decision of the circuit court of Whiteside County suppressing evidence gained from defendant, Jason Clements, after he pulled off the road during a roadside safety check and rescinding his statutory summary suspension. For the reasons that follow, I respectfully dissent.

¶ 32    At the heart of this appeal is whether Clements was seized and, if so, whether evidence acquired during this seizure was properly suppressed and his summary suspension was properly rescinded.

¶ 33    In determining whether a seizure has occurred, we focus on the perceptions and beliefs of the person seized, but not in a subjective way. Our test is an objective one: would a reasonable person in the Defendant's situation believe he had been stopped and was not free to leave? *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The majority correctly points out the four *Mendenhall* factors indicating a seizure: (1) the threatening presence of

several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person; or (4) using language or tone of voice compelling the individual to comply with the officer's requests. *Mendenhall*, 446 U.S. at 554; *People v. Luedemann*, 222 Ill. 2d 530, 553 (2006) (adopting *Mendenhall* standard).

¶ 34    While the events in this case are unusual, I do believe the facts, when analyzed in conjunction with the *Mendenhall* factors, establish that a reasonable person in the defendant's situation would have felt he had been stopped and was not free to leave. My belief draws support from the deferential portion of our standard of review. Our standard of review on appeals from rulings on motions to suppress is a dual one. We test the trial court's findings of fact to determine if they are against the manifest weight of the evidence. If they are not, we defer to those findings. *Luedemann*, 222 Ill. 2d at 542. Our review of the trial court's conclusions of law is *de novo. Luedemann*, 222 Ill. 2d at 542.

¶ 35    The trial court's findings of fact are critically important to my dissent. The only record we have of the January 18, 2011, hearing on the defendant's petition to rescind the statutory summary suspension is a bystander's report certified by the court. It reported that the court had found that

"while Trooper Rhodes had not intended to stop the Appellee's vehicle, a reasonable person in the Appellee's position would not have felt free to leave. Therefore, the trial Court ruled that the Appellee had been seized, and the Petition to Rescind Statutory Summary Suspension was allowed."

¶ 36    The findings of fact and law issued by the court following the May 19, 2011, hearing on the motion to suppress were actually reduced to an order and were more specific. The court found:

"1. That on October 31, 2010, the Illinois State Police conducted a roadside safety check on U.S. Route 30 and Dakin Road in Whiteside County, Illinois.

2. Said roadside safety check was conducted with at least 6-8 Illinois State Troopers all wearing their police uniforms and accompanying sidearms. Additionally, 6-8 State Police vehicles were present at the checkpoint, many of them with lights and flashers engaged.

3. At approximately 2:33 a.m., Trooper Vaughn Rhodes of the Illinois State Police was engaged in the stop of a vehicle other than that of the Defendant.

4. While engaged with said vehicle, Trooper Rhodes gestured to the Defendant's vehicle in a manner which a reasonable person would have believed to stop at said safety check.

5. Trooper Rhodes acknowledged that the Defendant's vehicle was not the 'next third car' to be stopped as prescribed by regulations promulgated by the State Police Supervisor prior to the commencement of the roadside safety check and that said regulations had not been changed by the Supervisor prior to the stop of the Defendant's vehicle.

6. Trooper Rhodes further testified that he had no knowledge of this roadside safety check being published in any local newspaper prior to October 31, 2010, and no other

evidence was introduced of any publication."

¶ 37    In making its rulings, the trial court drew what I believe to be a completely reasonable inference that, but for the existence of the safety checkpoint, the actions of Trooper Rhodes and the *show of police force and authority* represented by the number and appearance of the troopers and official vehicles at the checkpoint, defendant would neither have pulled off the road and stopped within the checkpoint area nor stayed in his vehicle waiting for Rhodes to come and speak with him.

¶ 38    The trial court also found, based on the facts and reasonable inferences drawn from those facts, that there was no articulable reason for the stop. Clements's car was not the "next third car" to be stopped in the execution of the checkpoint's protocols; nor–since Rhodes did not intend to stop Clements but merely to suggest that he reduce his speed and since Rhodes testified that he had no idea of Clements's actual speed–was he stopped because he was suspected of violating the law. I acknowledge that Clements *could* have been driving too fast for conditions–presumably the existence of the checkpoint–but Rhodes's lack of intent to stop him suggests caution rather than alarm.[1] Moreover, I note that there is no objective evidence–such as radar detection–that would indicate that defendant was either exceeding the posted speed limit or driving too fast for conditions.

¶ 39    The trial court's factual findings are not against the manifest weight of the evidence. Indeed, they mirror the testimony of the State Police trooper who was the only witness at both hearings. While the majority emphasizes the lack of defendant's testimony, this has, in my opinion, no bearing on the issue before us due to the fact that the pertinent test is an objective, rather than subjective, one. The trial court found that "Trooper Rhodes gestured to the defendant's vehicle in a manner which a reasonable person would have believed to stop at said safety check." Rhodes had testified he felt defendant was driving too fast. It is a reasonable inference that defendant did not intend to stop but did so because of Rhodes's gesture and shout. In addition, the conclusion reached by the trial court that no reasonable person in the defendant's circumstances would have felt free to leave flows logically from the facts.

¶ 40    The facts are bizarre, but I believe the trial court reached a conclusion on those facts that is consistent with existing case law and that its decision should be affirmed.

---

[1] I am, of course, assuming that the existence of the checkpoint regulations would not preclude the police from stopping someone, not the next third person, who was actually violating the law.