DECISION *Page 2 
{¶ 1} Defendant-appellant LaFawn Gilmore was indicted under two separate case numbers. In the case numbered B-0608412, Gilmore was charged with one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2) and one count of possession of cocaine in violation of R.C. 2925.11(A). In the case numbered B-0611421, Gilmore was indicted for one count of possession of cocaine in violation of R.C. 2925.11(A).
 {¶ 2} In the case numbered B-0608412, Gilmore pleaded no contest to the charges after the trial court denied his motion to suppress. The trial court accepted Gilmore's plea and sentenced him to five years on each charge, to be served concurrently. In the case numbered B-0611421, Gilmore pleaded guilty to possession of cocaine. The trial court sentenced him to serve 12 months in prison, to be served concurrently with the sentence imposed in B-0608412. Gilmore has appealed in both cases.
 I. Appeal No. C-070522, Trial No. B-0611421 {¶ 3} We note preliminarily that although Gilmore filed appeal number C-070522 in the case numbered B-0611421, his assignments of error challenge only those proceedings related to his convictions for trafficking in cocaine and possession of cocaine in the case numbered B-0608412. We, therefore, conclude *Page 3 
that Gilmore has abandoned appeal number C-070522.[1] As a result, we dismiss that appeal.[2]
 II. Appeal No. C-070521, Trial No. B-0608412 {¶ 4} In the appeal numbered C-070521, Gilmore raises two assignments of error for our review. In his first assignment of error, Gilmore argues that the trial court erred in denying his motion to suppress evidence. In his second assignment of error, Gilmore contends that the trial court erred in imposing concurrent five-year sentences for the trafficking offense and the possession offense because they were allied offenses of similar import.
 A. The Motion to Suppress {¶ 5} At the suppression hearing, the court heard testimony from two Cincinnati police officers involved in Gilmore's arrest. Officer Bryant Stewart testified that he was conducting undercover surveillance for drug sales at the intersection of Lincoln and Gilbert Avenues, an area known for a high incidence of drug trafficking, on September 11, 2006, when he observed a white Dodge Caravan pull up to a building on Lincoln Avenue. A black male exited from a nearby building and walked to the van. After a short conversation with the driver of the van, the man went briefly back to the building, then came out again, and got into the van. The van drove around the block. When the van returned, the black male exited from the van on the passenger side and walked away.
 {¶ 6} The van, which was driven by another black male, then drove away, going eastbound on Lincoln Avenue. Officer Stewart testified that this activity, in *Page 4 
his 20 years of experience, was very consistent with drug sales. As a result, he put out a radio broadcast describing exactly what he had seen, including a description of the van and the driver, and indicated there had been a possible drug transaction.
 {¶ 7} Cincinnati police officer Michael Harper was working in conjunction with the undercover officers on the drug sweep that day. He testified that he was located a block away from the site of the alleged drug transaction in his police uniform and a marked cruiser when he received Officer Stewart's broadcast. Five to ten seconds later, he saw the van described in the broadcast and pulled in behind it. In addition to the information in the broadcast, Harper observed several traffic violations involving the van, including dark window tint and a temporary license tag that was not visible.
 {¶ 8} Officer Harper immediately activated his lights and attempted to pull the van over, but the driver did not stop until he had gone a block and a half farther. Harper testified that during this time the driver, who was later identified as Gilmore, took his seat belt off and was moving around inside the van. When Gilmore finally pulled over, Harper testified, Gilmore appeared visibly nervous as Harper approached the vehicle. As he stood outside the driver's-side door, Harper saw Gilmore take something in his right hand and throw it on the van's floor. Harper, concerned that Gilmore was armed, ordered him out of the van. Gilmore complied.
 {¶ 9} After obtaining Gilmore's consent, Harper conducted a pat-down search for possible weapons. When he got to Gilmore's buttocks, he felt what he believed to be a baggie of crack cocaine. Harper placed Gilmore in handcuffs and *Page 5 
asked him about the identity of the item he had felt on Gilmore's person. Gilmore told Harper that it was a baggie of cocaine.
 {¶ 10} Gilmore then retrieved the baggie from his pants. Inside it were 17 individually wrapped pieces of crack cocaine. Gilmore also had about $900 in small bills on his person. After being read hisMiranda rights, Gilmore told Harper that he had just bought the crack cocaine from a black man on Lincoln Avenue for $700. When the police searched Gilmore's vehicle, they recovered more money wadded up on the floor of the van.
 {¶ 11} On appeal, Gilmore protests the initial stop of the van, the search and seizure of the cocaine from his person, his statements to the police, and the seizure of the money from the van. When reviewing a ruling on a motion to suppress evidence, we defer to the trial court's findings of historical fact, but assess the application of the law to those facts de novo.[3] We must also give due weight to the training and experience of police officers on the scene.[4]
 {¶ 12} Gilmore first argues that Officer Harper lacked probable cause to stop the van. But in State v. Fultz, the Ohio Supreme Court held that a police broadcast could not only justify the stop of a vehicle, but could also provide the police with probable cause to make an arrest, where the information received was sufficient to warrant the officer in believing that a felony had been committed.[5] Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."[6] *Page 6 
 {¶ 13} Here, Officer Harper received detailed information on his police radio from Officer Stewart, who had just personally observed Gilmore engage in behavior consistent with felony drug trafficking.[7]
Officer Harper was entitled to rely on this information and to act quickly in stopping Gilmore's van. In view of the Ohio Supreme Court's holding in Fultz, we conclude that the police broadcast was sufficiently descriptive to provide Officer Harper with probable cause to stop the van and to arrest Gilmore, irrespective of the misdemeanor traffic violations that he had witnessed.
 {¶ 14} Gilmore next argues that Officer Harper's subsequent search illegally exceeded the scope of a frisk for a weapon, and that his seizure of the cocaine was not justified under Minnesota v.Dickerson, [8] because the item in his buttocks area was not readily apparent as contraband to Officer Harper during the plain-feel search. But once Officer Harper had probable cause to arrest Gilmore, he was then authorized to conduct a warrantless search incident to his arrest, even though the search itself preceded Gilmore's formal arrest. An officer with probable cause to arrest can search incident to the arrest before making the arrest.[9] Thus, the fact that Gilmore was not formally arrested until after the search did not invalidate the search, if probable cause existed prior to the search and the search was substantially contemporaneous with the arrest. Because the record shows that Gilmore was placed under formal arrest immediately after the search, the search was contemporaneous with his arrest. Officer Harper could also then search the van incident to Gilmore's arrest.[10] Thus, contrary to *Page 7 
Gilmore's assertions, Officer Harper's warrantless search and seizure of the money from the van did not violate his Fourth Amendment rights either.
 {¶ 15} Gilmore finally contends that his statement admitting that the item in his pants was a bag of cocaine was obtained in violation ofMiranda v. Arizona, because it was in response to a question posed by Officer Harper after he had been arrested, but before he had been read his rights.[11] While we agree this statement should have been suppressed, any error in its admission was harmless, as a matter of law, in light of the fact that Officer Harper already had probable cause to arrest him and would have found the cocaine as part of a lawful search incident to Gilmore's arrest. Thus, we cannot conclude that the trial court erred in overruling Gilmore's motion to suppress on this basis. As a result, we overrule his first assignment of error.
 B. Allied Offenses of Similar Import {¶ 16} In his second assignment of error, Gilmore contends that the trial court erred in sentencing him for both possession of cocaine and trafficking in cocaine because they were allied offenses of similar import. The state concedes that the offenses were allied under State v.Cabrales, [12] but argues, nonetheless, that because the trial court imposed the sentences concurrently, any error by the trial court was harmless. We disagree.
 {¶ 17} In State v. Fields, this court held that "it is prejudicial plain error to impose multiple sentences" because the defendant's "`criminal record will reveal convictions for two felonies' when the defendant has committed only one *Page 8 
criminal act."[13] As a result, we sustain Gilmore's second assignment of error, vacate the sentences imposed by the common pleas court only in Case No. B-0608412, and remand that case for the limited purpose of resentencing on only one offense consistent with this decision.
Judgment accordingly.
HILDEBRANDT and CUNNINGHAM, JJ., concur.
[1] State v. Benson, 152 Ohio App.3d 495, 2003-Ohio-1944,788 N.E.2d 693, at ¶ 8.
[2] State v. Perez, 1st Dist. Nos. C-040363, C-040364, and C-040365,2005-Ohio-1326, at ¶ 24.
[3] Ornelas v. United States (1996), 517 U.S. 690, 696-699,116 S.Ct. 1657; see, also, State v. Hill (1998), 127 Ohio App.3d 265,712 N.E.2d 791.
[4] State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271.
[5] (1968), 13 Ohio St.2d 79, 234 N.E.2d 593, paragraph two of the syllabus.
[6] Illinois v. Gates (1983), 462 U.S. 213, 238, 1035 S.Ct. 2317.
[7] Maumee v. Weisner (1999), 87 Ohio St.3d 295, 720 N.E.2d 507, paragraph two of the syllabus.
[8] (1993), 508 U.S. 366, 113 S.Ct. 2130.
[9] Rawlings v. Kentucky (1980), 448 U.S. 98, 111,100 S.Ct. 2556.
[10] See Fultz, supra, at 82.
[11] (1966), 384 U.S. 436, 86 S.Ct. 1602.
[12] 1st Dist. No. C-050378, 2006-Ohio-1567, at ¶ 36, affirmed byState v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio 1625,886 N.E.2d 181.
[13] (1994), 97 Ohio App.3d 337, 347-348, 646 N.E.2d 866 quotingState v. Burl (Dec. 16, 1992), 1st Dist. Nos. C-920167 and C-920194. *Page 1