[Cite as *State v. Reed*, 2022-Ohio-3986.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200104 |
| | | TRIAL NO. B-1902448 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| ANTONIO REED, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 9, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *David Hoffmann*, Assistant Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    In February 2020, defendant-appellant Antonio Reed was convicted of trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(2), a first-degree felony. Reed was sentenced to an indefinite term of five to seven-and-one-half years under R.C. 2929.14(A)(1)(a).

{¶2}    In his first assignment of error, Reed argues that the trial court erred by denying his motion to suppress evidence seized during an unconstitutional search of his person.

{¶3}    In his second assignment of error, Reed argues that the trial court erred in sentencing him pursuant to the indefinite-sentencing scheme established under 2018 Am.Sub.S.B. 201, identified under R.C. 2901.011 as the Reagan Tokes Law, because the law is facially unconstitutional under the Ohio and United States Constitutions. For the following reasons, we overrule both assignments of error and affirm the judgment of the trial court.

### I. Procedural History

{¶4}    In May 2019, a grand jury indicted Reed on four counts of trafficking in and possession of fentanyl and fentanyl-related compounds. Reed filed a motion to suppress evidence of drugs collected at the time of his arrest based on Reed's claim that his Fourth Amendment rights were violated. After a hearing, the trial court denied the motion.

{¶5}    Reed subsequently pled no contest to the charges and the four counts merged at sentencing into a single violation of R.C. 2925.03(A)(2) for trafficking in a fentanyl-related compound. The trial court sentenced Reed under the Reagan Tokes Law to an indefinite term of five to seven-and-one-half years. This timely appeal

2

followed.

## II. Factual History

{¶6}   The testimony at the suppression hearing revealed that for approximately one year, members of the Gang Enforcement Unit of the Cincinnati Police Department ("CPD") and the Drug Enforcement Administration had been investigating a man named Damien Dennis for drug trafficking. According to Officer Tom Weigand of the CPD, who was part of the investigation team, Dennis was a "high-level drug trafficker dealing in large quantities of drugs" who "got his supply directly from Mexico." Over the course of the investigation, CPD intercepted various packages intended for Dennis and seized hundreds of thousands of dollars from his car, bank accounts and safety deposit box.

{¶7}   Weigand learned during the investigation that Dennis often went to a particular gas station on Vine Street in Cincinnati. While there, Weigand had observed on a handful of occasions that Dennis would sit in his car at a gas pump, another person would get into Dennis's car, an exchange would take place, the other person would exit from the car, and then both would drive away. During these exchanges, neither Dennis nor the other person would engage in any business with the gas station. Weigand testified that based on his 18 years with the CPD, including five years in the Gang Enforcement Unit, he recognized this as a common pattern for drug-trafficking interactions.

{¶8}   On May 7, 2019, Weigand was on duty in plainclothes tracking Dennis. Weigand observed Dennis pull up to a gas pump at the Vine Street gas station. Weigand saw another car pull up to the gas pump next to Dennis. Weigand then watched Reed get out of the second car and enter Dennis's car. Weigand saw Reed and

3

Dennis make an exchange of what Weigand "believed to be drugs," although Weigand admittedly could not see what was exchanged. After the exchange, Reed got out of Dennis's car and returned to his own. Then both cars left the gas station. Weigand did not see the occupants of either vehicle engage in any business with the gas station. Weigand believed that Dennis had just sold drugs to Reed because he knew from his investigation that Dennis received his supply in bulk from Mexico.

{¶9} As Reed drove away, Weigand radioed his observations to uniformed officers in marked patrol cars. Weigand testified that he requested that the uniformed officers conduct a traffic stop of Reed's vehicle "due to the fact that we had probable cause to believe that a drug transaction just took place." Weigand followed Reed's car to the parking lot of an apartment building. Reed parked, with Weigand close by, and Weigand radioed for the uniformed officers to close in.

{¶10} Reed was getting out of his car when the uniformed officers rolled up behind him in their patrol vehicles. One of the uniformed officers, Officer Charles Knapp, ordered Reed to show his hands and asked him about any outstanding warrants. Knapp testified that asking about warrants is a "tactic" he sometimes uses to defuse the situation when dealing with people who are suspected of having committed "serious felonies." During this time, Knapp removed Reed from his car and handcuffed him.

{¶11} After handcuffing Reed, Knapp patted Reed down, focusing on the area near the rear of the waistband of Reed's pants where Reed might be able to reach while handcuffed. Knapp then moved Reed away from the door of Reed's car and began a second pat-down of Reed. Knapp did not find anything during either pat-down.

{¶12} The officers obtained Reed's consent to search his vehicle and began

4

their search of the vehicle. Meanwhile, Knapp restrained Reed while Weigand conducted a thorough search of Reed's person. After noticing an "unnatural bulge" between Reed's legs, Weigand shook Reed's pants so that the item he felt would fall down the leg of Reed's pants. This led to Weigand's recovery of a bag containing drugs.

{¶13} After Weigand discovered the bag of drugs, Reed was placed into Knapp's patrol vehicle. At no point during the interaction did anyone tell Reed he was under arrest, nor was Reed informed of his *Miranda* rights.

### III. Analysis

### A. First Assignment of Error

{¶14} In his first assignment of error, Reed argues that his Fourth Amendment right against unreasonable searches and seizures was violated by the search of his person and therefore, the trial court erred in denying his motion to suppress. Reed contends that at the time of the search, there was no probable cause to search or arrest him and that the arrest was based upon evidence uncovered by the illegal search. Lacking probable cause, Reed argues, the police were not authorized to search Reed's person beyond a limited pat-down for weapons.

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* We must accept the trial court's factual findings if they are supported by competent, credible evidence, but we review de novo the trial court's application of the law to those facts. *Id.*

### 1. Reed did not waive his Fourth Amendment claim.

{¶16} As a preliminary matter, the state urges us to overrule Reed's first assignment of error because, the state contends, Reed waived the issue of probable cause. The state argues that during the proceedings in the trial court, Reed did not expressly claim that the police lacked probable cause to search or arrest him prior to the search that uncovered the drugs.

{¶17} In Reed's written motion to suppress, he argued that the search uncovering the drugs exceeded the legitimate scope of a pat-down during a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The motion states that argument was based on the state's response to his motion for a bill of particulars, which asserted that Reed was pulled over for a traffic stop. The state did not file a written response to the motion to suppress. Nevertheless, Reed's claim that the police exceeded the scope of a *Terry* stop carries with it the implicit assertion that there was no probable cause to support a full evidentiary search or arrest.

{¶18} Moreover, at the beginning of the suppression hearing, the judge summarized the written suppression motion as follows: "[T]he defense's position is that Mr. Reed was not under arrest and was beyond a *Terry* stop." The trial court went on to state:

> During the off-record conversation, the prosecutor's position is that the police had Mr. Reed under surveillance, observed what they believed to be illegal drug activity that would rise to the level of a felony, in which case the stop was effected by the observation of law enforcement; and, at that particular point in time, that

6

Mr. Reed was being placed under arrest and being searched pursuant to a legal, valid arrest.

**{¶19}** When asked by the court if it accurately summarized the parties' positions, defense counsel and the prosecutor said that it did. Ultimately, based on the testimony and arguments at the suppression hearing, the trial court found there was probable cause to arrest Reed and the search was a proper search incident to the arrest.

**{¶20}** Because the issue of probable cause was fully litigated by the parties at the suppression hearing, and considered by the trial court, we find that Reed did not waive the lack of probable cause as grounds for appeal.

### 2. Reed's search and arrest were supported by probable cause.

**{¶21}** The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits the government from "unreasonable searches and seizures." Absent an applicable exception, warrantless searches are per se unreasonable. *State v. Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864, ¶ 8 (1st Dist.).

**{¶22}** One such exception to the warrant requirement is the search incident to a lawful arrest. When a person is lawfully arrested, an officer may conduct a "full search of the arrestee's person" to search for evidence, not merely a protective pat-down to uncover weapons. *State v. Haynes*, 1st Dist. Hamilton No. C-140205, 2015-Ohio-3432, ¶ 25, citing *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Further, a search-incident-to-arrest need not follow the formal arrest but may precede the arrest, so long as probable cause for arrest existed at the time of the search and the search was contemporaneous with the arrest. *State v. Gilmore*, 1st Dist. Hamilton Nos. C-070521 and C-070522, 2008-Ohio-3475, ¶ 14,

7

citing *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

**{¶23}** Probable cause for a warrantless arrest exists when, based on the totality of the circumstances, " 'the arresting officer, at the time of the arrest, possess[es] sufficient information that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed.' " *State v. Acoff*, 2017-Ohio-8182, 100 N.E.3d 87, ¶ 11 (1st Dist.), quoting *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 39. Establishing probable cause " 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " *State v. Thorton*, 1st Dist. Hamilton Nos. C-170586 and C-170587, 2018-Ohio-2960, ¶ 21, quoting *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), fn. 13. Probable cause is a "practical, nontechnical concept." *Gates* at 287. It does not require officers to rule out an innocent explanation for suspicious facts. *Thorton* at ¶ 22.

**{¶24}** Similar to the case at bar, this court reviewed a probable-cause determination in *Gilmore*, 1st Dist. Hamilton Nos. C-070521 and C-070522, 2008-Ohio-3475. In that case, a Cincinnati police officer was conducting undercover surveillance in an area known to have a high level of drug-trafficking activity. *Id.* at ¶ 5. The officer watched as a van pulled up to a building, and a man left the building to approach the van. *Id.* The man spoke with the driver of the van, then briefly went back into the building before returning to the van. *Id.* The man got in the van, which proceeded to drive around the block. *Id.* When the van returned, the man got out of the van and walked away. *Id.* The officer testified based on his 20 years of experience, this pattern was suggestive of a drug transaction. *Id.* at ¶ 6. As a result, the *Gilmore* court found that there was sufficient probable cause to arrest the driver of the van

8

where the high level of drug activity in the area coincided with the officer's testimony about the established pattern of behavior indicating a drug transaction. *Id.* at ¶ 12-13.

{**¶25**} Further, probable cause does not require the police to actually witness the drug transaction at all where there is sufficient circumstantial evidence to demonstrate a fair probability that such a transaction has occurred. *State v. Whitt*, 2d Dist. Clark No. 2010 CA 3, 2010-Ohio-5291, ¶ 25. In *Whitt*, the police had engaged in a series of controlled drug buys through a confidential informant ("CI"). *Id.* at ¶ 4. Initially, the focus of the investigation was on the dealer who sold drugs to the CI. *Id.* However, the investigating detective came to believe that Whitt was the supplier who provided the drugs to the dealer. *Id.* In two of the four controlled buys, the CI gave money to the dealer, then the dealer interacted with Whitt at Whitt's residence, and after that, the dealer provided the drugs to the CI. *Id.* at ¶ 5 and 7. In the other two, the dealer was seen interacting with Whitt immediately before or shortly after the dealer sold drugs to the CI. *Id.* at ¶ 6 and 8. Although the investigating officers did not observe Whitt participating in any " 'hand-to-hand' drug transactions," the court nonetheless found that the pattern of behavior of the CI, the dealer, and Whitt, taken together, created probable cause that Whitt had supplied the drugs to the dealer. *Id.* at ¶ 25.

{**¶26**} Here, the trial court found that Weigand was surveilling Dennis, a known drug dealer that had been under investigation for almost a year. Weigand saw Reed and Dennis make an exchange in Dennis's car, parked at a gas pump without engaging in any business with the gas station. In Weigand's experience, this pattern was consistent with the pattern that had been established for Dennis's drug transactions. It does not matter that Weigand did not see drugs or know for sure that

9

drugs were exchanged because probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *State v. Jordan*, 2020-Ohio-689, 145 N.E.3d 357, ¶ 11 (1st Dist.).

{¶27}  We hold that Weigand had probable cause to arrest Reed following the observed transaction at the gas station, and when Weigand communicated the basis for his probable cause to Knapp and the other uniformed officers, any of the officers could lawfully stop Reed and initiate his arrest. *See Gilmore*, 1st Dist. Hamilton Nos. C-070521 and C-070522, 2008-Ohio-3475, at ¶ 13. Even assuming that Reed was not arrested until after the challenged search, a search is still a lawful search incident to arrest so long as probable cause existed at the time of the search and was contemporaneous with the arrest. *Id.* at ¶ 14. Regardless of the precise moment when the arrest occurred during the police interaction with Reed, probable cause existed prior to the start of the interaction, and the arrest was completed when Reed was secured in the police vehicle within moments of the challenged search of Reed's person. We therefore conclude that the search was a valid search incident to Reed's lawful arrest.

{¶28}  Reed cites *State v. Eppinger*, 74 Ohio App.3d 503, 599 N.E.2d 709 (8th Dist.1991) in support of his argument that there was no probable cause to arrest him prior to the search. However, *Eppinger* is distinguishable. In *Eppinger*, the Eighth District held that police lacked reasonable suspicion to justify an investigatory *Terry* stop of the defendant. *Id.* at 505. The detective in that case had observed "some kind of exchange" take place where several people were gathered in a schoolyard. *Id.* at 504. The police had recently received complaints of drug sales taking place at that location. *Id.* The court held that the observed activity "did not amount to suspicious criminal

activity." *Id.* at 505. By contrast, in the instant case, Weigand observed Reed make an exchange with a specific, known drug dealer. This exchange was not merely "some kind of exchange" taking place in a gathered crowd. Rather, Weigand observed Reed participating in an exchange following a peculiar, distinct pattern that his experience and training told him was specifically indicative of contraband changing hands. Based on the totality of the circumstances, we can clearly distinguish the facts in *Eppinger* from those in the case at bar.

{¶29} Because the challenged search was supported by sufficient probable cause and took place incident to Reed's lawful arrest, we overrule Reed's first assignment of error.

### B. Second Assignment of Error

{¶30} In his second assignment of error, Reed argues that the trial court erred in sentencing him to an indefinite sentence pursuant to the Reagan Tokes Law because the law is unconstitutional on its face as violative of the separation-of-powers doctrine, substantive- and procedural-due-process protections, and equal-protection principles.

{¶31} Reed failed to object to the constitutionality of the Reagan Tokes Law before the trial court. Failure to raise a constitutional objection in the trial court waives the issue, and "it need not be heard for the first time on appeal." *State v. Dixon*, 1st Dist. Hamilton No. C-210502, 2022-Ohio-3654, ¶ 3. The appellate court may nonetheless review a challenge to the constitutionality of a statute for plain error. *Id.* A "plain error" is one that is both "obvious and prejudicial" and would, if permitted, "have a materially adverse effect on the character and public confidence in judicial proceedings." *Id.* at ¶ 14.

{¶32} We have previously addressed a similar challenge to the Reagan Tokes Law in *State v. Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962. In *Guyton*, we determined that the Reagan Tokes Law is constitutional on its face, rejecting claims that the law violates separation of powers, due process, and equal protection. *Id.* at ¶ 69. Based on our holding in *Guyton*, we overrule Reed's second assignment of error.

### IV. Conclusion

{¶33} For the foregoing reasons, we overrule both of Reed's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**BOCK, J.**, concurs.
**ZAYAS, P.J.**, concurs in part and dissents in part.

**ZAYAS, P.J.**, concurring in part and dissenting in part.

{¶34} I agree with the majority opinion that the trial court properly denied Reed's motion to suppress, and that the Reagan Tokes Law is not facially unconstitutional under separation-of-powers, equal-protection, and substantive-due-process grounds. With respect to procedural due process, I respectfully dissent because I agree with Judge Bergeron's thoughtful dissent in *Guyton* at ¶ 107 (Bergeron, J., concurring in part and dissenting in part), that the notice and hearing procedures under the Reagan Tokes Law violate the fundamental requirements of procedural due process. I depart from this court's precedent because " 'stare decisis' does not apply with the same force and effect when constitutional interpretation is at issue." *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 35-37; *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 38 (Fischer, J., concurring).

Please note:

The court has recorded its entry on the date of the release of this opinion.

